IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **BILLY CASPER GOLF, LLC** | : | **Civil No. 1:19-CV-01420** |
| **Plaintiff,** | : | |
| v. | : | |
| **RG SERVICES, LLC** | : | |
| **Defendant.** | : | **Judge Sylvia H. Rambo** |

## M E M O R A N D U M

Before the court is Plaintiff's Partial Motion to Dismiss Defendant's Counterclaim. (Doc. 8.) For the reasons outlined below, the court will grant the motion.

## I.   BACKGROUND

On June 1, 2016, Billy Casper Golf, LLC ("Casper" or "Plaintiff") and RG Services, LLC ("RG" or "Defendant") entered into a contract (the "Agreement") for Casper to operate and service a country club with golfing in York County owned by RG (the "Club"). On August 16, 2019, Casper sued RG for breach of contract and unjust enrichment, alleging that RG caused the business relationship to collapse by breaching the Agreement in numerous ways, including by failing to supply sufficient working capital into an operating account and failing to pay various fees to Casper that RG owed it under the Agreement. (*See* Doc. 1.)

On October 21, 2019, RG filed an answer with multiple affirmative defenses and four counterclaims. (Doc. 7.) First, RG brought a breach of contract claim, alleging that Casper breached the Agreement by, *inter alia*, failing to properly supervise and hire sufficient competent workers to operate the Club. Second, RG brings a negligent hiring claim against Casper, alleging that Casper failed to properly supervise workers it hired to operate the Club. Third, RG brings a negligent supervision claim against Casper, largely alleging the same underlying facts as the negligent hiring claim. Fourth, RG brings a fraudulent inducement claim against Casper, primarily alleging that Casper made certain misrepresentations during pre-contract negotiations and in executing the contract. These misrepresentations included Casper claiming that it "held great expertise in the field of golf course management," that it would immediately provide those services upon entry into the agreement, and that it would provide "necessary software and systems to improve the financial performance of the Club." (Doc. 7, ¶ 89.) It is not clear from the answer, however, who exactly made these claims, in what manner they were made, when they were made, or why some of them are false.

On November 12, 2019, Casper filed a partial motion to dismiss under Rule 12(b)(6), seeking dismissal of RG's negligent hiring, negligent supervision, and fraud in the inducement counterclaims. (Doc. 8.) RG filed its opposition (Doc. 9), and Casper submitted a reply brief (Doc. 10). This matter is thus ripe for review.

## II.   STANDARD OF REVIEW

To survive a motion to dismiss under Rule 12(b)(6), the plaintiff must allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)).  "When reviewing a 12(b)(6) motion, we 'accept as true all well-pled factual allegations in the complaint and all reasonable inferences that can be drawn from them.'" *Estate of Ginzburg by Ermey v. Electrolux Home Prods., Inc.*, 783 F. App'x 159, 162 (3d Cir. 2019) (quoting *Taksir v. Vanguard Grp.*, 903 F.3d 95, 96-97 (3d Cir. 2018)). The facts alleged must be "construed in the light most favorable to the plaintiff." *In re Ins. Brokerage Antitrust Litig.*, 618 F.3d 300, 314 (3d Cir. 2010) (internal quotations, brackets, and ellipses omitted).  The universe of facts upon which the court may rely includes those facts alleged in the complaint, facts which the court may take judicial notice of, and indisputably authentic documents referred to in the plaintiff's complaint.  *Hartig Drug Co., Inc. v. Senju Pharm Co.*, 836 F.3d 261, 268 (3d Cir. 2016).

The Third Circuit has detailed a three-step process to determine whether a complaint meets the pleading standard.  *Bistrian v. Levi*, 696 F.3d 352 (3d Cir. 2014). First, the court outlines the elements a plaintiff must plead to state a claim for relief. *Id.* at 365.  Second, the court must "peel away those allegations that are no more

than conclusions and thus not entitled to the assumption of truth." *Id.* Third, the court "look[s] for well-pled factual allegations, assume[s] their veracity, and then 'determine[s] whether they plausibly give rise to an entitlement to relief.'" *Id.* (quoting *Iqbal*, 556 U.S. at 679). The last step is "a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* In assessing the level of factual details required under *Twombly*, the Third Circuit has held:

> The Supreme Court reaffirmed that Fed. R. Civ. P. 8 requires only a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests, and that this standard does not require detailed factual allegations.

*Phillips v. Cty. of Allegheny*, 515 F.3d 224, 231 (3d Cir. 2008) (internal citations and quotations omitted).

Under Federal Rule of Civil Procedure 9(b), a fraud plaintiff must plead "the date, place or time of the fraud, or" at least provide, with some other set of informative facts, "precision and some measure of substantiation into their allegations of fraud." *Ne. Rev. Servs., LLC v. Maps Indeed, Inc.*, 685 F. App'x 96, 102 (3d Cir. 2017) (internal quotations omitted). The complaint "also must allege who made a misrepresentation to whom and the general content of the misrepresentation." *Id.* (internal quotations omitted). The purpose of the heightened pleading requirement is to "state the circumstances of the alleged fraud with

sufficient particularity to place the defendant on notice of the precise misconduct with which it is charged." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (internal quotations omitted).

### III.   **DISCUSSION**

Casper argues, *inter alia*, that RG's claims must all be dismissed under the gist-of-the-action doctrine. Under Pennsylvania's gist-of-the-action doctrine, whether a party's claim sounds in contract or tort turns on whether the underlying duty the defendant allegedly breached arises from explicit terms in an agreement between the parties or arises as a matter of law from the circumstances at issue. *Bruno v. Erie Ins. Co.*, 106 A.3d 48, 68 (Pa. 2014).[1] In applying this doctrine, the court must peer beyond the labels given to the claims by the plaintiff and assess the underlying substance of the claims. *See id.* If the true basis of the plaintiff's cause of action is a duty sounding in tort, then the fact that the parties share a contract does not alter the court's analysis. *Id.* at 70. In that circumstance, "the contract is regarded merely as the vehicle, or mechanism, which established the relationship between the parties, during which the tort of negligence was committed." *Id.* at 70.

---

[1] While multiple courts continue to cite *eToll, Inc. v. Elias/Savion Adver., Inc.*, 811 A.2d 10 (Pa. Super. Ct. 2002) for its discussion of the gist-of-the-action doctrine, *Bruno* implicitly rejected it. *See Dommel Props., LLC v. Jonestown Bank and Trust Co.*, 626 F. App'x 361, 366 (3d Cir. 2015) (reversing a district court for relying on *eToll* for its analysis and instructing the court to apply the analysis in *Bruno*).

*Bruno* illustrates that there is nuance to this rule when the duty at issue is discussed in a contract between the parties. If a contract imparts a particular duty upon one party, and they fail to carry it out, those circumstances give rise to a breach of contract claim. *See id.* at 63 (citing *McCahan v. Hirst*, 7 Watts 175 (Pa. 1838)). If parties perform their contractual duties, but do so in a poor manner, they have not breached the contract—they have committed a tort. *See id.* If the contract, however, creates both a duty and uses language suggesting it must be carried out in a particular manner—such as "a contract between the parties which obligated the defendant to 'safely keep, pasture, and specially care for, and attend to' plaintiff's horses"—then an allegation that the defendant failed to reasonably perform their duties sounds in contract not tort. *Id.* (quoting *Cook v. Haggarty*, 36 Pa. 67 (Pa. 1859)). Put otherwise, if the contract uses language that imparts some sort of particular duty of care upon one of the parties, then it has supplanted the obligation arising under tort law.

Turning to RG's negligent supervision and negligent hiring claims, an examination of their substance reveals they sound in breach of contract. Here, RG has explicitly pleaded that Casper's duties to hire and supervise arise from the terms of the Agreement. (*See* Doc. 7, ¶ 67 ("Under the terms of the Management Agreement, BCG was solely responsible to hire, promote, supervise, direct and train all BCG employees."), ¶ 73(a) ("BCG fell into material breach and default of its

obligations under the Management Agreement including . . . Failure to properly train BCG Employees."), ¶ 73(n) (alleging Casper violated the Agreement by its "negligent hiring practices"); *see also* Doc. 7-1, § 4(A).)  The fact that RG has explicitly pleaded that Casper's "[f]ailure to ***properly*** train" employees and "***negligent***" hiring practices constituted breaches of the agreement means RG has pleaded that the contract both gave rise to Casper's duty to carry out these tasks and gave rise to the proper standard for carrying those duties out.  (Doc. 7, ¶¶ 73(a), 73(n) (emphasis added).)  This brings RG's negligent supervision and negligent hiring claims squarely in line with the *Bruno* court's discussion of *Cook*, rendering them claims sounding in breach of contract. *See Bruno*, 106 A.3d at 68 ("[B]ecause the duty the plaintiff alleged the defendant to have breached was ***the very same*** as that described by the contract, the contract was the origin of the duty alleged to have been breached, and . . . there was no error in treating it as a breach of contract.") (emphasis supplied).  RG's negligent supervision and negligent hiring claims will therefore be dismissed.

  RG has requested leave to amend.  Amendment, however, is generally used when a party has failed to plead sufficient facts to plausibly allege all necessary elements for their causes of action.  Here, RG's claims fail as a matter of law.  No addition of facts or details could fix them.  Indeed, RG's opposition did not even address the gist-of-the-action doctrine's application to its negligent hiring and

negligent supervision claims, nor did it explain how amendment would fix the issue. Thus, the court finds amendment would be futile and will dismiss these claims with prejudice.

Turning to RG's fraud claims, neither the Pennsylvania Supreme Court nor any published opinion by the Third Circuit has laid out the proper basis for determining which fraud claims survive the gist-of-the-action doctrine and which are barred by it. *See Downs v. Andrews*, 639 F. App'x 816, 820 (3d Cir. 2016) ("Pennsylvania state and federal courts have reached different conclusions about whether the gist of the action doctrine applies to fraudulent inducement claims."). Deciding this question at this point, however, is unnecessary, because RG's fraud claim fails to satisfy Rule 9(b). Specifically, the court cannot reasonably ascertain from RG's allegations where or when the misrepresentations at issue were made, who specifically made them, what the misrepresentations were (in a concrete sense, as opposed to mere puffery), or why they were false. While RG articulates the basic elements of a fraud claim, and mentions some facts that bring them close to stating a fraud claim, it simply paints in too broad a brush to satisfy Rule 9(b). *See KBZ Commc'ns Inc. v. CBE Techs. LLC*, 634 F. App'x 908, 912 (3d Cir. 2015) (holding the plaintiff's fraud claim did not satisfy the gist-of-the-action doctrine in part because "the vague allegations in the Complaint fail to meet the heightened pleading

standards applicable to allegations of fraud, as required by Federal Rule of Civil Procedure 9(b)").

The court, however, will grant RG leave to replead its fraud claim. In contrast to RG's negligent hiring and negligent supervision claims, the addition of details and some facts could potentially enable it to remedy this claim. *See, e.g., Mendelsohn, Drucker & Assocs. v. Titan Atlas Mfg., Inc.*, 885 F. Supp. 2d. 767, 790 (E.D. Pa. 2012) ("[F]raudulent inducement . . . constitutes a breach of duties of honesty imposed by society, not contractual duties."); *Sullivan v. Chartwell Inv. Partners, LP*, 873 A.2d 710, 719 (Pa. Super. Ct. 2005) (holding that fraud in "the inducement to contract" claims "are collateral to the performance of the contracts and therefore, are not barred by the gist-of-the-action doctrine"). The court will thus dismiss RG's fraud claim without prejudice, granting it leave to replead this claim.

## IV. <u>CONCLUSION</u>

For the reasons outlined above, the court will grant Plaintiff's partial motion to dismiss RG's counterclaims. RG's negligent hiring and supervision claims will be dismissed with prejudice, and RG's fraud claim will be dismissed without prejudice, giving it leave to replead. An appropriate order shall follow.

>   */s/ Sylvia H. Rambo*
>   SYLVIA H. RAMBO
>   United States District Judge

Dated: July 22, 2020